IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| REGINA R. FUQUA, #179970, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.: 2:17-CV-389-RAH |
| | ) | [WO] |
| JEFFERSON S. DUNN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

## I.      INTRODUCTION[1]

This 42 U.S.C. § 1983 action is pending before the court on an amended complaint filed by Regina R. Fuqua, an indigent state inmate, challenging her assault by another inmate at the Tutwiler Prison for Women. Doc. 6 at 3. Fuqua names as Defendants: Jefferson S. Dunn, the Commissioner of the Alabama Department of Corrections; Wendy Williams, an Associate Commissioner of the Alabama Department of Corrections; and Deidre Wright and Adrienne Givens, correctional wardens employed at Tutwiler during the relevant period of time. As Fuqua does not state otherwise and upon its liberal construction of the complaint, the court construes the amended complaint to seek relief from the defendants in both their individual and official capacities.

---

[1]All documents and attendant page numbers cited herein are those assigned by the Clerk of this court in the docketing process.

In the amended complaint, Fuqua asserts that on March 6, 2017, the Defendants failed to protect her from attack by inmate Camille Fields in a general population dorm at Tutwiler.  Doc. 6 at 2–3.[2]  Fuqua alleges this attack occurred due to overcrowding and understaffing at the facility.  Doc. 6 at 3.  Fuqua seeks any relief to which she is entitled, Doc. 6 at 4, including monetary damages.  Doc. 25.

The defendants filed a special report and relevant evidentiary materials in support of their report, including affidavits, prison documents and medical records, addressing the failure to protect claim presented by Fuqua.  Docs. 19 and 19-1–19-16.  In these documents, the defendants deny the allegations regarding the conditions at Tutwiler and maintain they did not act with deliberate indifference to Fuqua's safety.

After reviewing the special report filed by the defendants, the court issued an order on December 7, 2017 directing Fuqua to file a response to the defendants' report, supported by "affidavits, sworn/verified declarations or statements made under penalty of perjury and other evidentiary materials[.]"  Doc. 20 at 2.  The order specifically cautioned that "**unless within fifteen (15) days from the date of this order a party . . . presents sufficient legal cause why such action should not be undertaken** . . . the court may at any time [after expiration of the time for the plaintiff filing a response to this order] and **without further notice to the parties** (1) treat the special report and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by

---

[2]In a separate civil action filed with this court, Fuqua presented a deliberate indifference claim against correctional officers at Tutwiler whom she believed failed to protect her from a subsequent attack by inmate Fields outside the shift office on March 6, 2017.  *Fuqua v. Baker, et al.*, Case No. 2:17-CV-251-RAH-JTA (M.D. Ala.).  The attack challenged in that case is not at issue in the instant case.

this order, rule on the motion for summary judgment in accordance with the law."  Doc. 20 at 3 (emphasis in original).  Fuqua filed a sworn response to this order on January 3, 2018. Doc. 21.

Pursuant to the directives of the December 7, 2017 order, the court now treats the defendants' special report as a motion for summary judgment and concludes that summary judgment is due to be granted in favor of the defendants.

## II.    SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine [dispute] as to any material fact and that the moving party is entitled to judgment as a matter of law."  *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (internal quotation marks omitted); Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.").  The party moving for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the [record, including pleadings, discovery materials and affidavits], which it believes demonstrate the absence of a genuine [dispute] of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (holding that moving party has initial burden of showing there is no genuine dispute of material fact for trial). The movant may meet this burden by presenting evidence indicating there is no dispute of

material fact or by showing that the nonmoving party has failed to present appropriate evidence in support of some element of its case on which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322–24; *Moton v. Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (holding that moving party discharges his burden by showing the record lacks evidence to support the nonmoving party's case or the nonmoving party would be unable to prove his case at trial).

When the defendants meet their evidentiary burden, as they have in this case, the burden shifts to the plaintiff to establish, with appropriate evidence, that a genuine dispute material to her case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3) ("If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact [by citing to materials in the record including affidavits, relevant documents or other materials], the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it[.]"); *Jeffery*, 64 F.3d at 593–94 (holding that, once a moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or statements made under penalty of perjury], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact). In civil actions filed by inmates, federal courts "must distinguish between evidence of disputed facts and disputed matters of professional judgment. In respect to the latter, our inferences must accord deference to the views of prison authorities. Unless a prisoner can

point to sufficient evidence regarding such issues of judgment to allow him to prevail on the merits, he cannot prevail at the summary judgment stage." *Beard v. Banks*, 548 U.S. 521, 530 (2006) (internal citation omitted). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering her opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014); *Barker v. Norman*, 651 F.2d 1107, 1115 (5th Cir. Unit A 1981) (stating that a verified complaint serves the same purpose of an affidavit for purposes of summary judgment). However, "mere conclusions and unsupported factual allegations are legally insufficient to defeat a summary judgment motion." *Ellis v. England*, 432 F.3d 1321, 1326 (11th Cir. 2005).

A genuine dispute of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor such that summary judgment is not warranted. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007). The evidence must be admissible at trial, and if the nonmoving party's evidence "is merely colorable . . . or is not significantly probative . . . summary judgment may be granted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50 (1986); *see also* Fed. R. Civ. P. 56(e). "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice, there must be enough of a showing that the [trier of fact] could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990) (citing *Anderson*, 477 U.S. at 252). Only

disputes involving material facts are relevant and materiality is determined by the substantive law applicable to the case. *Anderson*, 477 U.S. at 248.

To demonstrate a genuine dispute of material fact, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts. . . .  Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine [dispute] for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).  "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.  At the summary judgment stage, this court should accept as true "statements in [the plaintiff's] verified complaint, [any] sworn response to the [defendants'] motion for summary judgment, and sworn affidavit attached to that response[.]" *Sears v. Roberts*, 922 F.3d 1199, 1206 (11th Cir. 2019); *United States v. Stein*, 881 F.3d 853, 857 (11th Cir. 2018) (holding that a plaintiff's purely self-serving and uncorroborated statements which are "based on personal knowledge or observation" set forth in a verified complaint or affidavit may create an issue of material fact which precludes summary judgment); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253 (11th Cir. 2013) (citations omitted) ("To be sure, [Plaintiff's] sworn statements are self-serving, but that alone does not permit [the court] to disregard them at the summary judgment stage . . . .  Courts routinely and properly deny summary judgment on the basis of a party's sworn testimony even though it is self-serving.").  However, general, blatantly contradicted and merely "[c]onclusory, uncorroborated allegations by a plaintiff in [her

6

verified complaint, declaration under penalty of perjury or] an affidavit . . . will not create an issue of fact for trial sufficient to defeat a well-supported summary judgment motion." *Solliday v. Fed. Officers*, 413 F. App'x 206, 207 (11th Cir. 2011) (citing *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir. 1990)).   In addition, conclusory allegations based on purely subjective beliefs of a plaintiff and assertions of which she lacks personal knowledge are likewise insufficient to create a genuine dispute of material fact.   *See Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997).   In cases where the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates there is no genuine dispute of material fact and the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex*, 477 U.S. at 323–24; *Waddell v. Valley Forge Dental Associates, Inc.*, 276 F.3d 1275, 1279 (11th Cir. 2001) (holding that to establish a genuine dispute of material fact, the nonmoving party must produce evidence such that a reasonable trier of fact could return a verdict in his favor).   "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case."  *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted).   "[T]here must exist a conflict in substantial evidence to pose a jury question."  *Hall v. Sunjoy Indus. Grp., Inc.*, 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citation omitted).   "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court

should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Although factual inferences must be viewed in a light most favorable to the plaintiff at the summary judgment stage and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard*, 548 U.S. at 525. Thus, a plaintiff's *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case. Here, after a thorough and exhaustive review of all the evidence which would be admissible at trial, the court finds that Fuqua has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of the defendants.

## III. DISCUSSION[3]

### A. Sovereign Immunity

To the extent Fuqua's request for relief is construed to seek monetary damages from

---

[3]In accordance with well-settled law, the court limits its review to the allegations set forth in the amended complaint and will not consider additional theories of liability presented in response to the defendants' special report. *See Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004) ("A plaintiff may not amend her complaint through argument in a brief opposing summary judgment."); *Ganstine v. Sec'y, Fla. Dep't of Corrs.*, 502 F. App'x. 905, 909–10 (11th Cir. 2012) (holding that a plaintiff may not amend the complaint at the summary judgment stage by raising a new claim or presenting a new basis for a pending claim); *Chavis v. Clayton Cty. Sch. Dist.*, 300 F.3d 1288, 1291 n.4 (11th Cir. 2002) (noting that district court properly refused to address a new theory of liability raised during summary judgment because the plaintiff had not amended the complaint with respect to the theory and therefore holding that such a claim was not properly before the court on appeal).

the defendants in their official capacities, they are entitled to sovereign immunity.  Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity."  *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  As the Eleventh Circuit has held,

> the Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]. There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. A State's consent to suit must be unequivocally expressed in the text of [a] relevant statute. Waiver may not be implied. Likewise, Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (internal quotation marks and citations omitted).  Thus, a state official may not be sued in his/her official capacity unless the State has waived its Eleventh Amendment immunity, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see Seminole Tribe v. Florida*, 517 U.S. 44, 59 (1996).

> Neither waiver nor abrogation applies here. The Alabama Constitution states that "the State of Alabama shall never be made a defendant in any court of law or equity." Ala. Const. Art. I, § 14. The Supreme Court has recognized that this prohibits Alabama from waiving its immunity from suit.

*Selensky*, 619 F. App'x at 849.  "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it."  *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (citing *Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990)).

In light of the foregoing, the defendants are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages from them in their official

capacities.  *Selensky*, 619 F. App'x at 849; *Harbert Int'l, Inc. v. James*, 157 F.3d 1271, 1277 (11th Cir. 1998) (holding that state officials sued in their official capacities are protected under the Eleventh Amendment from suit for damages); *Edwards v. Wallace Cmty. Coll.*, 49 F.3d 1517, 1524 (11th Cir. 1995) (holding that damages are unavailable from a state official sued in his official capacity). Summary judgment is therefore due to be granted in favor of the defendants on the claims for damages made against them in their official capacities.

### B.    Qualified Immunity

The defendants raise the defense of qualified immunity to the claims lodged against them in their individual capacities.  Doc. 19 at 4.  "The defense of qualified immunity completely protects government officials performing discretionary functions from suit [for damages] in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Gonzalez v. Reno*, 325 F.3d 1228, 1233 (11th Cir. 2003) (quoting *Hope v. Pelzer*, 536 U.S. 730, 739 (2002)).  "The purpose of the qualified immunity defense is to protect[] government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Youmans v. Gagnon*, 626 F.3d 557, 562 (11th Cir. 2010) (internal quotation marks and citations omitted).  "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565

U.S. 535, 546 (2012) (quotation marks and citations omitted).  "Unless a government agent's act is so obviously wrong, in light of the pre-existing law, that only a plainly incompetent officer or one who was knowingly violating the law would have done such a thing, the government actor is immune from suit."  *Lassiter v. Ala. A&M Univ. Bd. of Trustees*, 28 F.3d 1146, 1149 (11th Cir. 1994).  The Eleventh Circuit has determined that the law is "clearly established" for purposes of qualified immunity "only by decisions of the U.S. Supreme Court, Eleventh Circuit Court of Appeals, or the highest court of the state where the case arose."  *Jenkins v. Talladega City Bd. of Educ.*, 115 F.3d 821, 826–27 n.4 (11th Cir. 1997).   The Supreme Court "repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation."  *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009).   Even so, qualified immunity is only an affirmative defense to a request for damages; it has no impact on requests for declaratory or injunctive relief.  *See Wood v. Strickland*, 420 U.S. 308, 315, n.6 (1975) ("Immunity from damages does not ordinarily bar equitable relief as well."), *overruled in part on other grounds by Harlow v. Alexander*, 457 U.S. 800 (1982); *Am. Fire, Theft & Collision Managers, Inc. v. Gillespie*, 932 F.2d 816, 818 (9th Cir. 1991) (holding that the defense of qualified immunity is limited to actions for monetary damages and does not serve as a defense to actions seeking equitable relief).

"To receive qualified immunity, the government official must first prove that he was acting within his discretionary authority."  *Gonzalez*, 325 F.3d at 1234.  In this case, it is clear "that the defendants were acting within their discretionary authority[]" as correctional

officials at the time of the incident so "the burden shifts to [Fuqua] to show that qualified immunity is not appropriate." *Id.*; *see also Townsend v. Jefferson Cnty.*, 601 F.3d 1152, 1158 (11th Cir. 2010). To meet this burden, Fuqua must prove both that "(1) the defendants violated a constitutional right, and (2) this right was clearly established at the time of the alleged violation." *Holloman ex rel. Holloman v. Harland*, 370 F.3d 1252, 1264 (11th Cir. 2004); *Crosby v. Monroe Cty.*, 394 F.3d 1328, 1332 (11th Cir. 2004) (same); *Youmans*, 626 F.3d at 562 (citation omitted) ("[O]nce a defendant raises the defense [of qualified immunity and demonstrates he was acting within his discretionary authority], the plaintiff bears the burden of establishing both that the defendant committed a constitutional violation and that the law governing the circumstances was clearly established at the time of the violation."). This court is "free to consider these elements in either sequence and to decide the case on the basis of either element that is not demonstrated." *Id.*; *Rehberg v. Paulk*, 611 F.3d 828, 839 (11th Cir. 2010) (citing *Pearson*, 555 U.S. at 241–42) (holding that the court may analyze the elements attendant to qualified immunity "in whatever order is deemed most appropriate for the case."). In this case, the court will address whether the defendants acted with deliberate indifference to Fuqua's safety in violation of her constitutional rights.

### C.   Deliberate Indifference

#### 1.   Standard of Review

"A prison official's duty under the Eighth Amendment is to ensure reasonable safety, a standard that incorporates due regard for prison officials' unenviable task of

keeping dangerous [individuals] in safe custody under humane conditions." *Farmer v. Brennan*, 511 U.S. 825, 844–45 (1994) (internal quotation marks and citations omitted). Officials responsible for prison inmates may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's safety when the official knows the inmate faces "a substantial risk of serious harm" and with this knowledge disregards the risk by failing to take reasonable measures to abate it. *Id.* at 828. A constitutional violation occurs only "when a substantial risk of serious harm, of which the official is subjectively aware, exists and the official does not respond reasonably to the risk." *Cottone v. Jean*, 326 F.3d 1352, 1358 (11th Cir. 2003). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer*, 511 at 834. "Within [a prison's] volatile 'community,' prison administrators are to take all necessary steps to ensure the safety of . . . the prison staff and administrative personnel. . . . They are [also] under an obligation to take reasonable measures to guarantee the safety of the inmates themselves." *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). The Eleventh Circuit, however, has long "stress[ed] that a 'prison custodian is not the guarantor of a prisoner's safety.'" *Purcell ex rel. Estate of Morgan v. Toombs Cty., Ga.*, 400 F.3d 1313, 1321(11th Cir. 2005), (quoting *Popham v. City of Talladega*, 908 F.2d 1561,1564 (11th Cir. 1990)). The duty to protect inmates from one another is not absolute "because the Eighth Amendment addresses only punishment. Whether an injury inflicted by fellow prisoners . . . is punishment depends on the mental state of those who cause or fail to prevent it. The requisite mental state for

prison officials is intent, or its functional equivalent, described as deliberate indifference[.]"  *King v. Fairman*, 997 F.2d 259, 261 (7th Cir. 1993) (internal quotation marks and citations omitted).  "Only '[a] prison official's deliberate indifference to a known, substantial risk of serious harm to an inmate violates the Eighth Amendment.'" *Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (quoting *Marsh v. Butler Cty., Ala.*, 268 F.3d 1014, 1028 (11th Cir. 2001), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  The Eleventh Circuit has consistently held that "to state a § 1983 cause of action against prison officials based on a constitutional deprivation resulting from cruel and unusual punishment, there must be at least some allegation of a conscious or callous indifference to a prisoner's rights, thus raising the [mere] tort to a constitutional stature."  *Williams v. Bennett*, 689 F.2d 1370, 1380 (11th Cir. 1982) (quoting *Wright v. El Paso Cty. Jail*, 642 F.2d 134, 136 (5th Cir. 1981); *Zatler v. Wainwright*, 802 F.2d 397, 400  (11th Cir. 1986) (same).

The law requires establishment of both objective and subjective elements to demonstrate an Eighth Amendment violation.  *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1099 (11th Cir. 2014).  With respect to the requisite objective elements of a deliberate indifference claim, an inmate must first show "an objectively substantial risk of serious harm . . . exists.  Second, once it is established that the official is aware of this substantial risk, the official must react to this risk in an objectively unreasonable manner." *Marsh*, 268 F.3d at 1028–29.  As to the subjective elements, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious

14

harm exists, and he must also draw the inference. . . .   The Eighth Amendment does not outlaw cruel and unusual 'conditions'; it outlaws cruel and unusual 'punishments.'  . . . [A]n official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."  *Farmer*, 511 U.S. at 837–38; *Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003) (citing *Farmer*, *supra*, in noting that to demonstrate deliberate indifference a defendant "must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists — and the prison official must also 'draw that inference.'").  "Proof that the defendant should have perceived the risk, but did not, is insufficient."  *Campbell v. Sikes*, 169 F.3d 1353, 1364 (11th Cir. 1999); *Cottrell v. Caldwell*, 85 F.3d 1480, 1491 (11th Cir. 1996) (same).  Moreover, the Eleventh Circuit has specifically stated a plaintiff "cannot [simply] say, 'Well, they should have known[,]'" to show that a defendant had subjective awareness of a substantial risk of harm to her.  *Goodman v. Kimbrough*, 718 F.3d 1325, 1334 (11th Cir. 2013).  If a court "[w]ere to accept that theory of liability, the deliberate indifference standard would be silently metamorphosed into a font of tort law—a brand of negligence redux—which the Supreme Court has made abundantly clear it is not."  *Id*.  The conduct at issue "must involve more than ordinary lack of due care for the prisoner's interests or safety. . . .  It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause[.]"  *Whitley v. Albers*, 475 U.S. 312, 319 (1986).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a '"sufficiently culpable state of mind."'" *Farmer*, 511 U.S. at 834–38, 114 S.Ct. at 1977–80; *Wilson v. Seiter*, 501 U.S. 294, 299, 111 S.Ct. 2321, 2324–25, 115 L.Ed.2d 271 (1991). . . . Even assuming the existence of a serious risk of harm and legal causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists — and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003). A defendant's subjective knowledge of the risk must be specific to that defendant because "imputed or collective knowledge cannot serve as the basis for a claim of deliberate indifference. . . . Each individual Defendant must be judged separately and on the basis of what that person knew at the time of the incident." *Burnette v. Taylor*, 533 F.3d 1325, 1331 (11th Cir. 2008). A correctional official must be aware of a sufficiently serious threat to an inmate's safety before the Eighth Amendment "imposes a duty to provide reasonable protection. Merely negligent failure to protect an inmate from attack does not justify liability under section 1983[.] . . . The known risk of injury must be a strong likelihood, rather than a mere possibility before a [state official's] failure to act can constitute deliberate indifference." *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990) (citations and internal quotation marks omitted); *Brooks v. Warden*, 800 F.3d 1295, 1301 (11th Cir. 2015) (same); *King*, 997 F.3d at 261 ("To sustain his constitutional claim, the inmate must demonstrate something approaching a total unconcern for his welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm.") (internal quotation marks omitted). Deliberate indifference requires "a state of mind more blameworthy than

negligence." *Farmer*, 511 U.S. at 835.   Finally, the plaintiff must produce sufficient evidence that the defendant's deliberate indifference to a known serious risk of harm caused the plaintiff's constitutional injury.   *See Hale v. Tallapoosa Cty.*, 50 F.3d 1579, 1582 (11th Cir. 1995).

> To survive a motion for summary judgment, a plaintiff must submit evidence that the defendant-official had subjective knowledge of the risk of serious harm.   *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999).   In determining subjective knowledge, a court is to inquire whether the defendant-official was aware of a "*particular threat or fear felt by [the] [p]laintiff.*"   *Carter v. Galloway*, 352 F.3d 1346, 1350 (11th Cir. 2003) (emphasis added).   Moreover, the defendant-official "must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists — and the prison official must also draw that inference."   *Id.* at 1349 (quotations omitted).

*Johnston v. Crosby*, 135 F. App'x 375, 377 (11th Cir. 2005) (emphasis in original).

Consequently, to proceed beyond the properly supported motion for summary judgment filed by the defendants, Fuqua must first demonstrate an objectively substantial risk of serious harm existed to her prior to the altercation in the dorm with inmate Fields about which she complains and "that the defendant[s] disregarded that known risk by failing to respond to it in an objectively reasonable manner."   *Johnson v. Boyd*, 568 F. App'x 719, 721 (11th Cir. 2014), (citing *Caldwell*, 748 F.3d at 1100).   If she establishes these objective elements, Fuqua must then satisfy the subjective component.   To do so, Fuqua "must [show] that the defendant[s] subjectively knew that [she] faced a substantial risk of serious harm from [her inmate attacker].   The defendant[s] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm

17

exist[ed], and [they] must also draw the inference." *Johnson*, 568 F. App'x at 721 (internal citations omitted); *Farmer*, 511 U.S. at 837–38; *Carter*, 352 F.3d at 1349.

### 2.    Failure to Protect

Fuqua contends the defendants acted with deliberate indifference to her safety regarding an assault committed against her by inmate Camille Fields on March 6, 2017 in a general population dorm at Tutwiler.  In support of this claim, Fuqua alleges the assault occurred due to overcrowding and understaffing at Tutwiler.  Doc. 6 at 3.  Specifically, Fuqua asserts that overcrowding led to the placement of inmate Fields, an inmate she speciously contends suffered from debilitating mental health issues at the time of the attack, in a general population dorm instead of the mental health dorm.  Doc. 6 at 3.  Fuqua also alleges "not enough officers" were on duty at the time of the attack.  Doc. 6 at 3.

The defendants deny they acted with deliberate indifference to Fuqua's safety.  The defendants further deny that either overcrowding or understaffing played a part in the challenged assault.  In support of these denials, the defendants assert Tutwiler was adequately staffed at the time the incident occurred as "there were several security staff available and onsite."  Doc 19-13 at 1; Doc. 19-14 at 1 ("Tutwiler has a vast number of overtime personnel along with the assigned security personnel allowing each dorm to be covered.").  Furthermore, the objective prison records submitted herein, which are undisputed, establish that numerous correctional officers responded to the scene, assisted in gaining control of the inmates and provided escorts for the inmates to the shift office.  Doc. 19-1 at 3.  As to overcrowding, the undisputed prison records establish that on the

date of the assault at issue, Tutwiler housed 906 inmates, Doc. 19-1 at 5, whereas its inmate capacity is 975, http://doc.state.al.us/facility.[4]  Finally, with respect to the mental state of inmate Fields, Katherine Theuri, a psychiatric nurse practitioner assigned to Tutwiler during the time relevant to the complaint, advises that in July of 2016 mental health professionals deemed Fields fit for placement in general population.  Doc. 19-7 at 2.  Nurse Theuri further provides that at the time of the assault inmate Fields "was not considered to be a threat or danger to other inmates, including inmate Fuqua.  Based on inmate Fields' records, there was no reason to know that inmate Fields would assault inmate Fuqua[.]" Doc. 19-7 at 2.

In this case, Fuqua has failed to present any evidence showing inmate Fields posed "an objectively substantial serious risk of harm" to her prior to the assault about which she complains, a requisite element for establishment of deliberate indifference.  Fuqua has also offered no evidence that the defendants had subjective knowledge of a strong likelihood that she would be assaulted by inmate Fields.  Specifically, the evidence fails to show the defendants had knowledge of any impending risk of harm posed to Fuqua by inmate Fields prior to the attack made the basis of this complaint from which the defendants could infer that a substantial risk of imminent harm existed to Fuqua.  There is also no evidence the defendants drew the inference.  Thus, even if Fuqua had satisfied the objective component, her deliberate indifference to safety claim nevertheless fails as the record is devoid of

---

[4] Defendants Dunn and Williams aver they have no personal knowledge of the matters set forth in the complaint and no personal involvement with the daily operations of Tutwiler.  Doc. 19-15 & Doc. 19-16.

evidence that the defendants were subjectively aware of a substantial risk of serious harm to Fuqua posed by inmate Fields at the time of the challenged assault. *Johnson*, 568 F. App'x at 722 (holding that district court properly dismissed inmate's failure to protect claim because "[n]owhere does the complaint allege, nor can it be plausibly inferred, that the defendants subjectively foresaw or knew of a substantial risk of injury posed by [the inmate-attacker].")); *Chatham v. Adcock*, 334 F. App'x 281, 293–94 (11th Cir. 2009) (holding that where the plaintiff did "not identif[y] any specific 'serious threat' from [inmate attacker]" or report any such threat to the defendants, mere "fact that [attacker] was a 'problem inmate' with 'violent tendencies' simply 'does not satisfy the subjective awareness requirement.'"); *Lavender v. Kearney*, 206 F. App'x 860, 863 (11th Cir. 2006) (affirming summary judgment for defendant because, other than plaintiff's conclusory allegation defendant knew of assailant's violent nature and racial animus against white residents, which defendant denied, "there was no evidence he was aware that [assailant] posed a specific risk" to plaintiff or any other white resident, and emphasizing that "[g]eneral knowledge about an inmate's violent tendencies, without more specific information about the risk, does not constitute deliberate indifference"); *McBride v. Rivers*, 170 F. App'x 648, 655 (11th Cir. 2006) (holding that district court properly granted summary judgment to the defendants where the plaintiff "failed to show that the defendants had subjective knowledge of a risk of serious harm" because the plaintiff merely advised he "had problems" with fellow inmate and generally "fear[ed] for [his] life" if placed in the same cell with his eventual assailant but "did not identify a specific prior incident, from

which the defendant[s] could infer that substantial risk existed."); *Murphy v. Turpin*, 159 F. App'x 945, 948 (11th Cir. 2005) (concluding that "the district court did not err by dismissing [the plaintiff's] failure-to-protect charge for failure to state a claim. While [the plaintiff] alleged he requested protection from certain inmates and that the defendants knew about his request for protection from his original cellmate . . ., he did not allege that the defendants had notice that he was in danger from . . . the inmate who attacked him. Simply put, the allegations of [the plaintiff's] complaint do not show the requisite subjective knowledge of a risk of serious harm, and, thus, do not state a claim for deliberate indifference resulting from a failure to protect from the attack. . . .   Put another way, because [the plaintiff] alleged no facts indicating that any officer was aware of a substantial risk of serious harm to him from [the inmate who actually attacked him] and failed to take protective measures, his claim fails."); *Johnston*, 135 F. App'x at 377 (holding that the defendants were entitled to summary judgment because the plaintiff provided no evidence that prison officials "had subjective knowledge of the risk of serious harm presented by [the inmate who attacked him]" and "introduced no evidence indicating that he notified [the defendants] of any particularized threat by [his attacker] nor of any [specific] fear [he] felt [from this particular inmate].").[5]

---

[5]In her response, Fuqua presents additional theories of liability in support of her failure to protect claim, i.e., Fuqua refused to provide a statement to an Investigations and Intelligence officer in support of a sexual harassment claim made by Fields against two male correctional officers thereby prompting Fuqua to make a general request for protection from Fields, Doc. 21 at 2, after the attack at issue, Fuqua reported commission of the assault, Doc. 21 at 3, and due to Fields making threats towards correctional officers and her violent nature as evidenced by her conviction for child abuse, Doc. 21 at 3–4, correctional officials should have known of a potential attack on Fuqua.  As previously noted, the court cannot consider these allegations since each constitutes a basis for liability not presented in the amended complaint. *Supra* at 8,

Additionally, Fuqua's assertion that overcrowding and understaffing created a security hazard at Tutwiler is insufficient, standing alone, to state a claim of constitutional magnitude. Overcrowding in prisons is not per se unconstitutional and there are no specific factual allegations in the amended complaint which demonstrate conditions at Tutwiler during the relevant time period exceeded constitutional limits due to overcrowding. *See Parrish v. Alabama Dep't. of Corr.*, 156 F.3d 1128, 1129 n.1 (11th Cir. 1998) (citing *Rhodes v. Chapman*, 425 U.S. 337, 347–48 (1981)). "Similarly, [even if a limited number of officers were on duty at the time of the attack,] there is nothing inherently wrong with having only a few staff members supervise inmates." *Laube v. Haley*, 234 F. Supp. 2d 1227, 1245 (M.D. Ala. 2002). The plaintiff presents no direct facts to support her general and conclusory allegations that Tutwiler was overcrowded and understaffed when the attack at issue occurred nor does she show that these conditions constituted a contributing factor to the March 6, 2017 assault; instead, the objective prison records strictly undermine these allegations. Moreover, there is no evidence of rampant violence at Tutwiler. The law is well-settled that an occasional and isolated attack by one prisoner on another does not demonstrate the existence of unconstitutional conditions inside the prison. *Purcell*, 400 F.3d at 1320. Likewise, the failure of a correctional official "to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as [a constitutional

n.3.  Nevertheless, as set forth herein, neither a general request for protection, post-attack knowledge, an inmate's tendency to threaten correctional officers nor her alleged violent nature establishes the objective or subjective component of deliberate indifference.

violation]." *Farmer*, 511 U.S. at 838.  A prison is an inherently dangerous place which is why the law requires a plaintiff asserting an Eighth Amendment violation to show the defendants had knowledge of a "strong likelihood, rather than a mere possibility" of injury.  *Brown*, 894 F.2d 1537 (internal quotation marks and citations omitted).   As previously determined, Fuqua has failed to make such a showing in this case.

Insofar as Fuqua's claims against the defendants rest solely on a theory of respondeat superior or vicarious liability, she is entitled to no relief as the law directs that "each Government official, his or her title notwithstanding, is only liable for his or her own misconduct."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009); *Cottone v. Jenne*, 326 F.3d 1352, 1360 (11th Cir. 2003) (holding "[i]t is well established in this Circuit that . . . [there is no liability] under § 1983 . . . on the basis of respondeat superior or vicarious liability."); *Gonzalez v. Reno*, 325 F.3d 1228, 1234 (11th Cir. 2003) (concluding that government officials in a civil rights action cannot be held liable on the basis of respondeat superior or vicarious liability); *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999), (holding that 42 U.S.C. § 1983 does not allow a plaintiff to hold an official liable under either a theory of respondeat superior or vicarious liability).

Since the defendants did not act with deliberate indifference to Fuqua's safety, they are entitled to qualified immunity from the request for monetary damages made against them in their individual capacities and summary judgment is due to be granted in favor of the defendants on this request for relief.   Moreover, due to the lack of deliberate indifference, Fuqua is likewise due no declaratory or injunctive relief from the defendants

in any capacity and summary judgment is therefore due to be granted in favor of the defendants on these requests for relief.

## IV.   CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.  The defendants' motion for summary judgment be GRANTED.

2.  Judgment be GRANTED in favor of the defendants.

3.  This case be DISMISSED with prejudice.

4.  Costs be taxed against the plaintiff.

On or before **June 5, 2020**, the parties may file objections to this Recommendation. A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made.   Frivolous, conclusive, or general objections to the Recommendation will not be considered.

Failure to file written objections to the proposed factual findings and legal conclusions set forth in the Recommendations of the Magistrate Judge shall bar a party from a *de novo* determination by the District Court of these factual findings and legal conclusions and shall "waive the right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice.   11TH Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993) ("When the magistrate provides such notice and a party still fails to object to the findings of fact [and law] and those findings are adopted by the district court the party may not challenge them on appeal

in the absence of plain error or manifest injustice."); *Henley v. Johnson*, 885 F.2d 790, 794

(11th Cir. 1989).

     DONE this 22nd day of May, 2020.


          /s/ Wallace Capel, Jr.
          WALLACE CAPEL, JR.
          CHIEF UNITED STATES MAGISTRATE JUDGE